IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BERNIS MICHELE WHITT WHITE,

    Plaintiff,

v.                                                                  Case No. 1:19-cv-01216-JDB-atc

CHESTER COUNTY ELECTION COMMISSION,
*et al.,*

    Defendants.

---

ORDER DENYING AS MOOT INITIAL MOTION OF DEFENDANTS CHESTER COUNTY,
TENNESSEE, AND CHESTER COUNTY ELECTION COMMISSION TO DISMISS,
GRANTING AMENDED MOTION OF CHESTER COUNTY, TENNESSEE, AND CHESTER
COUNTY ELECTION COMMISSION TO DISMISS,
AND
GRANTING MOTION OF DEFENDANT STATE OF TENNESSEE TO DISMISS

---

INTRODUCTION

On September 20, 2019, the Plaintiff, Bernis Michele Whitt White, brought this action against the Defendants, Chester County, Tennessee (the "County"); the County Election Commission (the "Commission"); and the State of Tennessee (the "State"), alleging violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"), and the Rehabilitation Act, 29 U.S.C. § 701, *et seq.* (the "RA"). (Docket Entry ("D.E.") 1.) Specifically, White, former Administrator of Elections ("AOE") for the Commission, complained that she suffered discrimination and retaliation at the hands of her employer related to her disability. Before the Court are the separate motions of the County and the Commission (D.E. 16), as amended (D.E.

18)[1] and of the State (D.E. 17) to dismiss the complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  As the issues have been fully briefed, the motions are ripe for disposition.

## THE COMPLAINT

According to the pleading, White began working for the Commission as the AOE in June 2009.  Her salary was paid "primarily" by the County and she received her benefits through the same entity.  (D.E. 1 ¶ 19.)

Plaintiff suffers from depression and worked for some time without incident, receiving pay increases, reappointment to her position, and no negative reviews.  For years before her disability was known, she was not required to complete timesheets reflecting the hours she worked; no records were kept or required regarding her vacation and sick leave, accumulated or taken; and she was not required to submit doctors' notes.  Moreover, the Commission's policy manual did not set forth particular hours for a normal work week.

On February 28, 2017, White traveled to Arizona for in-patient treatment for her depression.  As far as she knew, the Commission's members were unaware of the nature of the trip, except for Stephen Morris, the Commission's chairman.  Upon her return to work on May 30, 2017, members of the Commission were advised of the reason for her absence.  At a meeting some two months later, Commissioner Bill Moore berated and insulted her regarding her absences and requested that she begin keeping a file of her time away from work and notify him when she would be out.  He also asked for a prognosis concerning her disability.  She complied, and continued treatment.

---

[1]In light of the amendment, which superseded the initial motion of the County and the Commission, D.E. 16 is DENIED as moot.

At an October 26, 2017, meeting, the Commission voted to terminate her employment. According to the minutes, her attendance was not the reason for her firing. The following day, the Commission issued a separation notice. In the section of the notice intended to reflect an explanation for the employment action, no reason was given other than that she had been fired. The notice stated that White's employer was Chester County Local Government.

On or about November 1, 2017, she filed a workers' compensation claim arising from an injury that occurred on July 27 of that year. The County and its workers' compensation insurer handled the claim before the Tennessee Court of Workers' Compensation Claims, during which it identified the County as her employer.

In the instant action, Plaintiff alleges alternatively that the Commission is an instrumentality of the County and she, therefore, was an employee of the County and that the Commission was an instrumentality of the State and that she was thus a State employee. (*See id.* ¶¶ 9-10.) She seeks a declaratory judgment that the actions complained of were unlawful under the ADA and/or RA, as well as compensatory and punitive damages, and attorneys' fees.

## STANDARD OF REVIEW

Rule 12(b)(1) permits dismissal of a complaint for lack of subject matter jurisdiction. A facial attack on subject matter jurisdiction, as has been invoked here, "questions merely the sufficiency of the pleading." *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir.) (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)), *cert. denied*, 138 S. Ct. 380 (2017). In analyzing a facial attack, "a district court must take the allegations in the complaint as true." *Qandah v. Johor Corp.*, 799 F. App'x 353, 356 (6th Cir. 2020). The plaintiff bears the "burden of proving jurisdiction in order to survive the motion." *Wayside Church*, 847 F.3d at 817 (quoting *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th

Cir. 1986)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Jackson v. Ford Motor Co.*, 842 F.3d 902, 906 (6th Cir. 2016)) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

## DISCUSSION

### *RA Claims*

The RA "prohibits discrimination against the disabled by recipients of federal funding and requires reasonable accommodations to permit access to such recipient facilities and programs by disabled persons." *L.G. by and through G.G. v. Bd. of Educ. of Fayette Cty., Ky.*, 775 F. App'x 227, 230 (6th Cir. 2019). The statute provides in pertinent part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). The Defendants seek dismissal of the RA claims on the grounds that they are time-barred.

"Dismissal of a complaint because it is barred by the statute of limitations is proper when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle [her] to relief." *Dimond Rigging Co., LLC v. BDP Int'l, Inc.*, 914 F.3d 435, 441 (6th Cir. 2019) (quoting *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002)) (internal quotation marks omitted). The RA does not contain a statute of limitations and, therefore, courts must borrow the limitations period from the most analogous state cause of action. *Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 292 (6th Cir. 2019). In Tennessee, the statute of limitations to be applied to RA claims is the one-year period set forth in Tennessee Code Annotated § 28-3-104(a)(1)(A). *I.L. through Taylor v. Knox Cty. Bd. of Educ.*, 257 F. Supp. 3d 946, 964 (E.D. Tenn.

2017), *aff'd on other grounds by I.L. by and through Taylor v. Tenn. Dep't of Educ.*, 739 F. App'x 319 (6th Cir. 2018).  The accrual date of an RA claim, which is determined by federal law, is the date "the plaintiff knows or has reason to know of the injury which is the basis of [her] action." *Endres*, 938 F.3d at 292 (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)).

It is the position of the Defendants that, whether the claim accrued on October 26, 2017, the date of the Commission's vote, or October 27, 2017, the date of the separation notice, Plaintiff's RA claim, filed almost two years later, is untimely.  White does not appear to disagree with either the appropriate statute of limitations or the accrual dates identified by the Defendants.  Instead, the Court understands her argument to be that, since she timely filed an Equal Employment Opportunity Commission ("EEOC") charge on or about August 21, 2018, within 300 days of the employment action, and brought this suit on or about June 25, 2019, within ninety days of her receipt of a right to sue letter, the suit is timely.  However, courts in this circuit have held that the filing of an EEOC charge is not a prerequisite to an RA suit against a nonfederal employer, *Tuck v. HCA Health Servs. of Tenn., Inc.*, 7 F.3d 465, 470-71 (6th Cir. 1993); *Caldwell v. Bartlett City Schs.*, Case No. 2:16-cv-2608-JPM-tmp, 2017 WL 8819282, at *10-11 (W.D. Tenn. Oct. 17, 2017), and, thus, does not toll the statute of limitations, *Gong v. The Cleveland Clinic Found., Inc.*, Case No. 1:16CV2624, 2017 WL 433212, at *2-3 (N.D. Ohio Jan. 31, 2017); *Knapp v. City of Columbus*, No. C2-01-255, 2002 WL 193849, at *4 (S.D. Ohio Jan. 17, 2002).  As the RA claims are time-barred, they are hereby DISMISSED.

*ADA Claims*

The ADA was passed "to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities."  *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 848 (6th Cir. 2018) (quoting 42 U.S.C. § 12101(a)(8) (pre-2008

5

amendments)) (internal quotation marks omitted). "To that end, the law broadly prohibits discrimination against a qualified individual on the basis of disability as it applies to aspects of employment including hiring, advancement, and firing." *Id.* (citing 42 U.S.C. § 12112(a)) (brackets and internal quotation marks omitted).

Plaintiff stated in her complaint that she was bringing this action under Titles I and II of the ADA.[2] Title I prohibits discrimination by "covered entities" against qualified individuals "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020). A "covered entity" is defined under the statute as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). Title II proscribes discrimination on the basis of disability with respect to "the benefits of the services, programs, or activities of a public entity[.]" 42 U.S.C. § 12132; *see also Madej v. Maiden*, 951 F.3d 364, 372 (6th Cir. 2020), *reh'g en banc denied* (Mar. 26, 2020). A "public entity" under Title II is defined as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]" 42 U.S.C. § 12131(1).

---

[2]The Court notes that the scope of White's ADA claim as alleged in the complaint is not entirely clear. Although Plaintiff made this statement in paragraph 1 under the heading "Nature of the Complaint" (*see* D.E. 1 ¶ 1), Count 1 of the pleading, which contained the allegations of violation of the ADA, quoted Title II and averred that Defendants were "public entities" for purposes of that title, that they violated Title II when terminating her employment, and that they discriminated against her "by negatively impacting the terms and conditions of her employment on the basis of her disability" in violation of Title II (*id.* ¶ 56). Other than the initial sentence referenced above, nowhere in the complaint did White state that the Defendants were "covered entities" under Title I or that they violated Title I. Thus, there is some question in the Court's mind as to whether a Title I claim has even been properly asserted. In any case, for reasons expressed herein, any such claim cannot survive a Rule 12 motion to dismiss.

Title I.

*Liability of the County and Commission*

The County and Commission seek dismissal of the Title I claim because White was an employee of the State, not the County, and, therefore, the County is not a "covered entity" for purposes of the statute. In taking this position, these Defendants point to *Ellis v. Bradley County, Tennessee*, No. 1:06-CV-260, 2007 WL 1830756 (E.D. Tenn. June 22, 2007), *aff'd*, 387 F. App'x 516 (6th Cir. 2008). David Ellis was employed as the AOE of the Bradley County, Tennessee, Election Commission. *Ellis*, 2007 WL 1830756, at *1. Following his termination, Ellis sued the county under the ADA. *Id.* The county moved to dismiss the complaint under Rule 12(b)(6), citing to Tennessee statutes, caselaw, and Tennessee Attorney General opinions that suggested Ellis was functionally an employee of the State, which must therefore be solely liable for any illegal employment action. *Id.* at *1-2. The plaintiff countered by arguing that he must be an employee of the county, pointing to his paychecks, which were cut by the "Bradley County Executive." *Id.* at *2.

Thus, resolution of the motion to dismiss in *Ellis* turned on whether an AOE was a county or a State employee. *Id.* Noting that there was conflicting authority on the subject, District Judge Curtis Collier embarked on a thorough analysis and concluded, on balance, that Ellis was employed by the State, not the county. *Id.* at *2, 5-6. The factors to be weighed in making the court's determination, as articulated in Tennessee jurisprudence, included (1) which entity bore the employee's salary expense, (2) whether the employee's authority existed beyond the county's boundaries, and (3) whether the overall duties of the employee were "applicable to the people of the county alone." *Id.* at *2-3, 5-6 (citing *Spurlock v. Sumner Cty., Tenn.*, 42 S.W.3d 75, 78-80

7

(Tenn. 2001); *Stambaugh v. Price*, 532 S.W.2d 929, 933 (Tenn. 1976); and *Durham v. Dismukes*, 333 S.W.2d 935, 938-39 (Tenn. 1960)).

> With respect to the first factor, Judge Collier stated:
>
> It is clear the county does [bear plaintiff's salary expense], as evidenced by [p]laintiff's paystub, and by Sections 2-12-208 [and] 209 of the Tennessee Code. Plaintiff also received life and health insurance and retirement benefits from [d]efendant. Yet the baseline [AOE] salary is set by State law. Tenn. Code Ann. § 2-12-208. The State sometimes pays its share of the salary cost, although its payments are not to be construed as rendering an [AOE] as a State official. Tenn. Code Ann. §§ 2-12-209 and 210. A county may not reduce an [AOE's] salary or the [county election c]ommission's budget, for that matter beyond the prior year's; in short, the county's budgetary discretion is clipped. *Id.* Though [p]laintiff does not wear the "primary badge" of a State official, this criteria does not contribute overwhelmingly to the county employee side of the scale because of the county's limited discretion in obligating its funds towards a [county election c]ommission or an [AOE].

*Id.* at *5 (internal record citations, some other citations, and footnotes omitted).

The second factor Judge Collier found non-dispositive because, on the one hand, the AOE's "role was to manage the day-to-day operations of the Bradley County Election Commission" but, on the other, the Tennessee Supreme Court had held in *Abercrombie v. City of Chattanooga*, 313 S.W.2d 256, 258 (1958), that a county election commission was "not an arm of the county government." *Id.* The district court considered the third factor to be the most significant, concluding that, as the AOE "helped manage federal, State, county, and municipal elections," his "duties were not owed to the county alone." *Id.* at *6.

Judge Collier also recognized that "the employer's right to control the employee has long been the touchstone for determining whether an employment relationship exists." *Id.* at *4. In the case before him, Ellis was employed by the county election commission, the members of which were appointed and removed by the State Election Commission. *Id.* at *6 (citing Tenn. Code Ann. § 2-12-101). Any vacancy on the county commission was filled by the State commission. *Id.*

8

(citing Tenn. Code Ann. § 2-12-106). Thus, the county had little control over Ellis's selection. *Id.* As Judge Collier observed, "If everyone above [p]laintiff, responsible for his hiring and firing, was a State official and appointed by the State, it would be unfair to hold [the county] liable for actions taken without its input, direction or sway." *Id.* The State's right to control Ellis was further evidenced by the county's inability to abolish his position, lower his compensation below the prior year's, set his goals or the manner and means by which to achieve those goals, or to employ assistants for him. *Id.*

Tennessee Code Annotated § 8-17-102 weighed, in Judge Collier's view, on the county employee side of the scale. *Id.* at *4 n.2. The statute, which falls under the chapter heading "Ethical Standards for Officials and Employees" of the Tennessee Code, states that "for the purpose of this chapter, the county election commission shall be considered an instrumentality of county government; and the administrator of elections and other employees of the election commission shall be considered county employees." Tenn. Code Ann. § 8-17-102(a)(2). The court decided, however, that the greater weight of authority favored a conclusion that an AOE was controlled not by the county but by the State Election Commission, state law, and, ultimately, the State itself.[3] *Ellis*, 2007 WL 1830756, at *6.

---

[3]The court also found that, but for its introductory limiting text, Tennessee Code Annotated § 2-12-210 "would be strong evidence of [p]laintiff's position as a county employee." *Id.* at *5 n.3. The statute provides:

> Nothing in Acts 1986, ch. 930 shall be construed as conferring upon any county election commission, administrator of elections or any other county election official, status as a state employee. All such persons shall be subject to all applicable purchasing and budgetary laws of such county.

9

In affirming the district court on appeal, the Sixth Circuit was perhaps more succinct, stating:

> Ellis's duties "were not owed to the county alone." *See* Tenn. Code Ann. § 2-12-201(a)(9) and (12). Ellis was associated with the Bradley County Election Commission, whose membership was controlled by the state election commission. *See* Tenn. Code Ann. § 2-12-101. Because the Bradley County Election Commission members are hired, fired, and disciplined by the state election commission, Bradley County did not have the authority to hire, fire, or discipline Ellis. *See id.* Ellis's duties were defined by state law. *See* Tenn. Code Ann. § 2-12-201.
>
> Read in context, the statutes to which Ellis refers to support his argument that he was a county, rather than a state, employee do not apply. *See* Tenn. Code Ann. § 2-12-210; Tenn. Code Ann. § 8-17-102(a)(2). Under these circumstances, Ellis was for all intents and purposes an employee of the State of Tennessee rather than Bradley County. Indeed, the Tennessee Supreme Court has determined that a county election commission "is not an arm of the county government." *Abercrombie*[, 313 S.W.2d at 258]. Because Bradley County was not the proper defendant, Ellis's complaint was subject to dismissal for failure to state a claim for relief.

*Ellis*, 387 F. App'x at 517.[4]

*Ellis* was next addressed in *Peterson v. Dean*, Civil Action No. 3:09-cv-628, 2010 WL 5184794, at *6 (M.D. Tenn. Dec. 14, 2010). In *Peterson*, plaintiffs, the AOEs of several Tennessee counties, sued the members of their respective county election commissions after their employment was terminated or threatened to be terminated. *Peterson*, 2010 WL 5184794, at *3. The complaint alleged that both the AOEs and the commissioners were county employees. *Id.* In response to the defendants' motions to dismiss, the plaintiffs argued that §§ 2-12-210 and 8-17-102 "conclusively establish[ed] that county commissioners and administrators are county employees or officials." *Id.* at *5. District Judge Thomas Wiseman, Jr., disagreed. *Id.* With

---

[4] Ellis went on to sue the State of Tennessee. *See Ellis v. Tenn.,* No. 1:09-CV-131, 2010 WL 3057818, at *1 (E.D. Tenn. Aug. 2, 2010). In an order entered February 5, 2014, Judge Collier held that Ellis was an employee of the State. *Ellis v. Tenn.*, No. 1:09-CV-131, 2014 WL 465395, at *2 (E.D. Tenn. Feb. 5, 2014), *aff'd*, 603 F. App'x 355 (6th Cir. 2015).

10

respect to § 2-12-210, he found that the provision did not in fact "establish that county election commissioners [were] county employees." *Id.* Rather, he stated, "it provides that a specific legislative act shall not be construed as conferring upon county election commissions or [AOEs] status as state employees." *Id.* Section 8-17-102 likewise did not establish county employee status, he opined, if for no other reason but that it was limited in application to the chapter regarding ethical standards in which it was located and, therefore, lacked general application. *Id.*

Judge Wiseman adopted *Ellis*, finding its reasoning regarding the employment status of AOEs equally applicable to county election commissioners. *Id.* at *6. Specifically, the court noted that county commissioners were appointed by the State Election Commission without input from the counties, the counties had no authority to hire or fire commissioners, and, while the commissioners were paid by the counties, the amount of their compensation was set by statute and could not be reduced by the counties. *Id.* In addition, the commissioners' duties were established by statute and were likewise outside the ambit of the counties. *Id.* Accordingly, based on *Ellis*, as well as the Tennessee Supreme Court's holding in *Abercrombie*, the court ruled that county election commissioners were State, rather than county, employees. *Id.*

*Ellis* was most recently revisited in *Murray v. Washington County, Tennessee*, No. 2:17-cv-00184 REEVES/CORKER, 2018 WL 4289617, at *1-4 (E.D. Tenn. Sept. 7, 2018) -- this time in connection with an AOE's clerk. Murray was employed by the Washington County, Tennessee, Election Commission under the oversight of the county's AOE. *Murray*, 2018 WL 4289617, at *1. After he was discharged, he sued the county under the Family and Medical Leave Act. *Id.* The county moved to dismiss the complaint pursuant to Rule 12(b)(6) on the grounds that Murray was an employee of the State, rather than the county. *Id.* at *1-2.

11

District Judge Pamela Reeves found guidance in *Ellis* and *Peterson*, concluding that "Washington County did not have any control over the hiring or firing of Murray and all of his work duties were under the control of the State appointed [AOE]." *Id.* at *2. Although Murray was a clerk whose duties included stuffing envelopes and picking up mail, Judge Reeves found this fact made no difference, stating that

> the duties of the [county election c]ommission and the [AOE] are set by the State and are outside control of the County. Here, Murray was hired by the [AOE] to help with the function of the State created office, independent of the County. The person with authority to hire and fire Murray was [the AOE], and [the AOE] is a state official/employee for purposes of the [Family and Medical Leave Act] under the holding of *Ellis*. Murray has not presented any authority that he should be treated differently.

*Id.* at *3.

White argues that *Ellis* was wrongly decided, citing first to § 2-12-210 and contending that the statute, as amended in 1986, "made clear, then, that county election administrators were not to be considered state employees." (D.E. 19 at PageID 96.) As noted above, the limiting language of the statute refers to Chapter 930 of the Public Acts of 1986, which amended Title 2, Chapter 12, Part 2 of the Tennessee Code to add § 2-12-208, setting forth basic minimum yearly salaries for AOEs,[5] and § 2-12-209, requiring the State to make payments to counties in which the AOE was certified under the provisions of Tennessee Code Annotated § 2-11-202(b). Tenn. Pub. Acts 1986, ch. 930. The 1986 legislation also amended § 2-2-108 to add provisions requiring that counties with certified AOEs keep county election commission offices open a minimum number of hours, and § 2-11-202 to add language regarding revocation of AOE certification in the event of an official's failure to participate in training seminars or upon a finding he or she was guilty of gross

---

[5]In 1997, the term "registrars" was changed to AOEs. *See Ellis*, 2007 WL 1830756, at *4.

12

negligence, and requiring counties to maintain accurate records of AOEs' attendance at training seminars and to transmit those records to the State Election Commission. *Id.* Upon revocation of an AOE's certification, the State's payments to the county would terminate. *Id.*

As did the *Ellis* district and appellate courts and the *Peterson* court, the undersigned rejects the Plaintiff's broad interpretation of § 2-12-210. It appears to the Court that the Chapter 930 amendments referred to in the limiting language dealt with budgetary issues, which would have no application to the question before this Court.

Plaintiff also briefly cites to § 8-17-102. To the extent she contends that the provision supports her position, this Court, like the Sixth Circuit in *Ellis* and the *Peterson* court, is unpersuaded, as its application is, as *Peterson* explained, clearly limited to ethical standards.

In sum, the Court finds the reasoning in *Ellis* and its progeny to be persuasive and adopts it here. Accordingly, White's position as AOE rendered her an employee of the State, not the County. Her ADA claims against the County and Commission are DISMISSED.

*Liability of the State*

The State argues that it is immune from suit under Title I pursuant to the Eleventh Amendment, which "bars all suits, whether for injunctive, declaratory, or monetary relief, against the state and its departments by citizens of another state, foreigners or its own citizens." *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (quoting *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993)). In response, White concedes the State's immunity. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001) (Title I suits against states are

barred by the Eleventh Amendment). Accordingly, the Title I claim against the State is DISMISSED.[6]

Title II.

White maintains that the Eleventh Amendment does not, however, bar a disability discrimination claim under Title II because she was denied access to a service, program, or activity of a State agency. There are three exceptions to the State's immunity: "(1) when the state has consented to suit; (2) when the exception set forth in *Ex parte Young*, 209 U.S. 123 [] (1908) applies; and (3) when Congress has clearly and expressly abrogated the state's immunity." *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016), *reh'g en banc denied* (Sept. 30, 2016). Plaintiff appears to invoke only the third exception, arguing that, since Congress has abrogated the State's Eleventh Amendment immunity from suit under Title II, she should be permitted to pursue her remedies thereunder.

It is true that "Congress has expressed an unequivocal desire to abrogate Eleventh Amendment immunity for violations of the ADA." *Babcock v. Mich.*, 812 F.3d 531, 534 (6th Cir. 2016) (citing 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter.")). "But the [United States] Supreme Court has held that Congress's attempted abrogation is only valid in limited circumstances, depending upon the nature of the ADA claim." *Id.* (citing *United States v. Ga.*, 546 U.S. 151, 159 (2006); *Tenn. v. Lane*, 541 U.S. 509, 533-34 (2004); and *Garrett*, 531 U.S. at 374).

---

[6]In light of the Court's determination, it need not also address the State's other asserted grounds for dismissal of the Title I claim.

In evaluating whether the Eleventh Amendment bars a particular suit under Title II, the Supreme Court has articulated a three-part test:  The court is to

> [d]etermine on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* (quoting *Georgia*, 546 U.S. at 159) (ellipses omitted); *see also Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010)).  White's claim fails at the first step.  The alleged misconduct on the part of the State arises from her employment by the Commission.  While Title II's application in the employment context is an open question in this circuit, *see Whitfield v. Tenn.*, 639 F.3d 253, 258 (6th Cir. 2011) ("we need not decide whether Title II applies to employment discrimination"), the majority of circuits have found that it does not apply.  *See Taylor v. City of Shreveport*, 798 F.3d 276, 282 (5th Cir. 2015) ("Unlike Title I of the ADA, Title II does not create a cause of action for employment discrimination."); *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 421 (4th Cir. 2015) ("Based on the text and structure of Title II and the ADA, we agree with the majority of circuits to have considered the question that Title II unambiguously does not provide a vehicle for public employment discrimination claims."); *Brumfield v. City of Chicago*, 735 F.3d 619, 626 (7th Cir. 2013) ("We conclude that Title II unambiguously does not apply to the employment decisions of state and local governments."); *Mary Jo C. v. N.Y. State and Local Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013) (the ADA "unambiguously limits employment discrimination claims to Title I"); *Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1314 (10th Cir. 2012) (adopting majority view); *Zimmerman v. State of Ore. Dep't of Justice*, 170 F.3d 1169, 1178-79 (9th Cir. 1999) ("when viewed as a whole, the text, context and structure of the ADA show unambiguously that Congress did not intend for Title II to apply to employment").  The outlier is

the Eleventh Circuit's decision in *Bledsoe v. Palm Beach County Soil and Water Conservation District*, 133 F.3d 816, 825 (11th Cir. 1998) ("Title II does state a cause of action for employment discrimination[.]").

Upon review of these cases, the Court adopts the majority view, concluding that Title II provides White no remedy.  *See Hembree v. Office of Dist. Attorney General for 13th Judicial Dist. of Tenn.*, No. 2:18-cv-00097, 2019 WL 1437913, at *2 (M.D. Tenn. Apr. 1, 2019) ("employment is not a service, program, or activity within the meaning of 42 U.S.C. § 12132 for purposes of Title II of the ADA").  Perhaps the Ninth Circuit best summarized the underpinnings of the majority view in *Zimmerman*:

> The structure of the ADA demonstrates congressional intent in five main ways:  (1) Congress placed employment-specific provisions in Title I, which is labeled "Employment," whereas Congress placed no employment-related provisions in Title II, which is labeled "Public Services."  (2) Congress defined "qualified individual with a disability" differently in Title I than in Title II.  In Title I, a person is "qualified" if the person can work, whereas in Title II a person is "qualified" if the person is eligible to receive services or participate in a publicly provided program.  (3) Allowing employment discrimination claims under Title II would make Title I redundant as applied to public employees and would eviscerate the procedural requirements of Title I for those employees.  (4) Congress gave regulatory authority to different agencies for Title I and Title II.  Congress gave authority over Title I to the EEOC, the agency that administers most federal employment-related statutes.  (5) Congress expressly linked the employment-related provisions of the Rehabilitation Act to Title I of the ADA, not to Title II.

*Zimmerman*, 170 F.3d at 1176.  Based on its finding that White has failed to state a viable claim under Title II, the Court need not reach the remaining prongs of the Eleventh Amendment analysis. *See Zibbell v. Mich. Dep't of Human Servs.*, 313 F. App'x 843, 847-48 (6th Cir. 2009) (where a plaintiff has failed to state a viable claim, the other steps of the *Georgia* analysis should not be considered).  The Title II claim is barred by the Eleventh Amendment and is therefore DISMISSED.

## CONCLUSION

For the reasons set forth herein, the motions of the Defendants (D.E. 17-18) to dismiss this matter are GRANTED. The initial motion to dismiss filed by the County and the Commission (D.E. 16) is DENIED as moot. The Clerk is DIRECTED to enter judgment for the Defendants.

IT IS SO ORDERED this 25th day of August 2020.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE
